IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TRAYVON SMITH,

    Plaintiff,

 v.

MS. PETERSON, MR. JOHNSON,
ANDREW YORDE, EARL HEIER, JIM ALLEN,
TODD RIEMER, TRAVIS TAVES,
THOMAS BRANDT, THOMAS TOMASZEWSKI,
RICHARD OLSON, and JOHN DOE 1,

    Defendants.

OPINION and ORDER

17-cv-30-jdp

---

  Plaintiff Trayvon Smith, who is incarcerated at Waupun Correctional Institution, alleges that while he was confined as a juvenile at the Lincoln Hills School, institution staff beat him after breaking up a fight among several detainees, failed to provide him with medical care, and then performed unwanted dental procedures on him to cover up his injuries. Smith is proceeding pro se and has had difficulty identifying all of the defendants involved in the incident, despite being given multiple opportunities and extensions of time to do so. Now defendants have filed a motion for summary judgment, contending that they are entitled to judgment for several reasons, including that Smith has failed to properly identify the full names of some of the defendants, has failed to state specifically how each defendant was involved in violating his rights, and cannot overcome defendants' qualified immunity defense. Dkt. 59. With assistance from other inmates, Smith has responded to defendants' motion. After reviewing the parties' submissions, I conclude that there are genuine disputes of material fact that preclude summary judgment. I also conclude that Smith cannot litigate this case on his own going forward. Therefore, I am denying defendants' motion for summary judgment and

striking the remainder of the schedule. I will stay this case while the court attempts to recruit counsel for Smith.

UNDISPUTED FACTS

From defendants' proposed findings of fact, Smith's responses, evidence in the record, and the statements from Smith's verified complaints, I find the following facts to be undisputed unless otherwise noted.

Smith was incarcerated at Lincoln Hills School for Boys in July 2013. On the evening of July 13, he and Timothy McGee, another juvenile detainee, went into a bathroom. A short time later, six boys ran into the bathroom and attacked Smith and McGee. Defendants Yorde and Allen, both youth counselors, saw the six boys run into the bathroom. Yorde activated his personal alarm and entered the bathroom, where he saw Smith and McGee being punched repeatedly by the other boys. Yorde told the boys to stop fighting and to exit the bathroom. Most of the boys left the bathroom and were restrained by staff who had arrived on the scene, including defendants Thomas Tomaszewski, Thomas Brandt, Travis Taves, Todd Riemer, Jim Allen, and Earl Heier. Smith had wrapped his arms around another boy to prevent the boy from hitting him, and did not exit the bathroom. Yorde took out his pepper spray and told Smith and the other boy to stop fighting and to get on the ground. (Smith says he let go of the other boy and got on the ground, but Yorde says that Smith and the other inmate continued to "bear-hug" and grapple with each other. Smith also says that "Ms. Peterson," a youth counselor, was present in the bathroom and told Smith he was "going to pay for this." Smith has not been able to identify Peterson's full name, and defendants deny that anyone named Peterson was present during the incident.)

Yorde told Smith that he was going to "direct [him] to the floor" and then did so. (Smith says that after he was on the floor, Yorde stomped on the back of his right leg and told him to "keep still," even though Smith was not moving. Yorde denies stomping on Smith's leg.) After Smith was on the floor, defendant Todd Riemer, a patrol officer, attempted to handcuff and shackle him. Riemer says that Smith was "resistive," so he had to put his knee on Smith's back, between his shoulder blades, to restrain him. Smith denies that he was resistive. After he was restrained, Smith stated, "This is fucking bullshit, I got jumped." (Smith says that the officer who shackled him kicked him in the mouth several times. It is not clear whether Smith is referring to Riemer or someone else. Defendants deny that any officer kicked Smith.)

Defendant Heier transported Smith to the segregation unit in a van. (According to Smith, Riemer was present during the transport and punched him in the face and head several times, breaking his tooth. Smith says that when they arrived at the segregation unit, he asked Riemer if he could see medical staff and take a shower because he was covered in blood, and that Riemer laughed and stated, "In your dreams." Riemer denies punching Smith and says that he was not present during the transport or after Smith was placed in segregation.) Smith wanted to file a complaint but was told he could not do so because the incident was being investigated. Smith says that he did not receive medical attention for several days.

On July 17, Smith was seen by defendant Dr. Richard Olson, a dentist. Olson confirmed that Smith had a chipped molar and a cut on the inside of his lip. Smith tried to refuse treatment for the tooth because he was being released soon and wanted to show "someone on the street" what had happened to him. He says that defendant Officer Johnson and the officer who had kicked him in the face while he was on the way to segregation held him down while

3

Dr. Olson fixed the broken tooth. Defendants deny that anyone held Smith down and forced him to receive treatment. (Smith has not been able to identify Johnson's full name.)

ANALYSIS

Smith was granted leave to proceed on claims that (1) defendants Andrew Yorde, Earl Heier, Jim Allen, Todd Riemer, Travis Taves, Thomas Brandt, Thomas Tomaszewski, and Ms. Peterson, the individuals who were involved in breaking up the fight between inmates on July 13, 2013, used excessive force against him in the bathroom or failed to intervene to protect Smith from excessive force; (2) defendant Riemer used excessive force against Smith while transporting him to segregation and then refused to get him medical attention; and (3) defendants Officer Johnson, Officer Doe No. 1, and Dr. Richard Olson violated his rights to due process and the First Amendment by forcing him to have his tooth fixed against his will and in retaliation for seeking to file a complaint.

Defendants have moved for summary judgment on all of Smith's claims. They argue that (1) Smith's excessive force claims fail because the force used against Smith was reasonable and because they are entitled to qualified immunity; (2) Smith's medical care claims fail because he did not have a serious medical need and received adequate medical care; and (3) his remaining claims fail because Smith has been unable to identify the proper defendants or because he has failed to state a claim against the defendants that he has identified. I address each of defendants' arguments below.

**A. Excessive force and failure to intervene**

  **1. Legal standard**

As I explained in the screening order, the precise standard for plaintiff's excessive force claim is unclear, because Smith was a juvenile detainee when the underlying events occurred. Both the Eighth and Fourteenth Amendments impose duties on state officials regarding the safety and well-being of individuals in their custody. Neither the Supreme Court nor the Court of Appeals for the Seventh Circuit has decided whether the Eighth or Fourteenth Amendment applies to claims brought regarding conditions at a juvenile facility. *Reed v. Palmer*, 906 F.3d 540, 549 (7th Cir. 2018) ("Supreme Court precedent is not clear about whether state juvenile detention facility conditions should be judged under the Eighth Amendment's Cruel and Unusual Punishment Clause or the Fourteenth Amendment's Due Process Clause.").

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). "The 'unnecessary and wanton infliction of pain' on a prisoner violates his rights under the Eighth Amendment." *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009). To prevail on an Eighth Amendment excessive force claim, a convicted prisoner must prove that the offending officer applied force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). The factors relevant to this determination include: (1) why force was needed; (2) how much force was used; (3) the extent of the injury inflicted; (4) whether the defendant perceived a threat to the safety of staff and prisoners; and (5) whether efforts were made to temper the severity of the force. *Whitley*, 475 U.S. at 321.

5

The Fourteenth Amendment applies to claims brought by pretrial detainees, who are not convicted prisoners, and need not prove that the defendant had a specific state of mind to succeed on an excessive force claim. To succeed on an excessive force claim, pretrial detainees need only show that the force used was "objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). That is, the pretrial detainee must show "objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.* at 2473–74.

Defendants argue that Smith's claims fall under the Eighth Amendment because Smith invoked the Eighth Amendment in his pleadings. But Smith is a pro se prisoner who has no legal education, so his citation to the Eighth Amendment is not determinative of the correct standard. Many courts have concluded that the more protective Fourteenth Amendment due process standard applies to claims of mistreatment brought by juvenile detainees if the juveniles are not detained because of a criminal conviction. *See, e.g.*, *A.J. ex rel. L.B. v. Kierst*, 56 F.3d 849, 854 (8th Cir. 1995); *Gary H. v. Hegstrom*, 831 F.2d 1430, 1432 (9th Cir. 1987); *H.C. v. Jarrard*, 786 F.2d 1080, 1084–85 (11th Cir. 1986); *Milonas v. Williams*, 691 F.2d 931, 942 & n.10 (10th Cir. 1982); *J.S.X. Through D.S.X. v. Foxhoven*, 361 F. Supp. 3d 822, 832 (S.D. Iowa 2019). Like the juvenile detentions at issue in those cases, an adjudication of juvenile delinquency in Wisconsin "is not a conviction of a crime." Wis. Stat. § 938.35(1). *See also J.S.X. Through D.S.X.*, 361 F. Supp. 3d at 832 ("Given the expressly non-penal, non-criminal nature of Iowa juvenile delinquency adjudications and dispositions, the Court finds Plaintiffs' Eighth and Fourteenth Amendment claims more appropriately arise under the Fourteenth Amendment only.").

6

I need not decide whether the Eighth or Fourteenth Amendment applies to Smith's claims because defendants' motion for summary judgment fails under both standards. Before trial, I will ask the parties to submit briefs explaining which standard applies to Smith's claims.

2. **Smith's claims**

Defendants contend that Smith's excessive force claims fail because the force used against him by Yorde and Riemer was reasonable and applied in a good faith effort to restore discipline. They contend that their actions to subdue and restrain Smith do not constitute excessive force because it is undisputed that Smith was fighting with another juvenile, was failing to comply with orders, and was being resistive and disrespectful. If it were actually undisputed that Smith was engaging in resistive and dangerous behavior and that Yorde and Riemer used only the amount of force necessary to neutralize the threat, defendants might be entitled to summary judgment on the excessive force claims. *Whitley*, 475 U.S. at 319 ("The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."); *Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012) ("Custodians must be able to handle, sometimes manhandle, their charges, if a building crammed with disgruntled people who disdain authority (that's how the prisoners came to be there, after all) is to be manageable.").

But Smith's version of events is dramatically different than defendants' version. Smith says that he complied with Yorde's order to lie on the floor and was not resisting, but that Yorde stomped on the back of his leg and Riemer kneed him in the back, kicked him in the mouth, and later punched him several times in the face and head. If a jury believed Smith's

7

account, it could conclude that defendants Yorde and Riemer used unreasonable and excessive force against Smith. *Alicea v. Thomas*, 815 F.3d 283, 288–89 (7th Cir. 2016) (noting previous holding that "significant force is unreasonable after a suspect has stopped resisting"); *Hill v. Shelander*, 992 F.2d 714, 717 (7th Cir. 1993) ("If the fact-finder were to accept [plaintiff's] story, then [defendant] arguably acted without justification because there would have been no need for [defendant] to physically assault [plaintiff] in order to maintain or restore discipline in the cell."). Therefore, Yorde and Riemer are not entitled to summary judgment.

Defendants also argue that they are entitled to qualified immunity on Smith's excessive force claim. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017). Because the facts surrounding the use of force are in dispute, defendants are not entitled to summary judgment. When the facts are construed in the light most favorable to Smith, a reasonable officer or youth counselor would have known at the time of the incident that Smith's conduct did not justify the sort of force described in his account.

As for defendants Earl Heier, Jim Allen, Travis Taves, Thomas Brandt, and Thomas Tomaszewski, defendants argue that they are entitled to summary judgment because Smith has not alleged that they used excessive force against him. But Smith was granted leave to proceed on claims that these defendants used excessive force *or* failed to intervene to protect Smith from force used by other officers. Dkt. 58 at 2 ("[A]ll of the defendants in the room could be liable either for directly harming him or failing to intervene."). *See also Sanchez v. City of Chicago*, 700 F.3d 919, 926 (7th Cir. 2012) ("[I]t is possible to hold a named defendant

8

liable for his failure to intervene vis à vis the excessive force employed by another officer, even if the plaintiff cannot identify the officer(s) who used excessive force on him."). Defendants do not develop any argument as to why defendants Heier, Allen, Taves, Brandt, or Tomaszewski are not liable for failing to intervene, and instead state incorrectly that Smith "was not granted leave to proceed on such claims." Dkt. 70 at 4. Therefore, Smith's excessive force and failure to intervene claims must be resolved at trial.

**B. Medical care claim**

Smith was also granted leave to proceed on a claim that defendant Riemer failed to notify medical staff that Smith had been injured and needed medical care after he had been transferred to segregation. To prove that Riemer violated his due process rights under the Fourteenth Amendment by failing to obtain medical care for him, Smith would need to show that Reimer acted (1) purposefully, knowingly, or recklessly, and (2) that his conduct was objectively unreasonable. *Miranda v. Cty. of Lake*, 900 F.3d 335, 353 (7th Cir. 2018) (describing standard for medical care claims brought by pretrial detainees under the Fourteenth Amendment). To succeed on a denial of medical care claim under the Eighth Amendment, Smith would need to prove that Riemer acted with "deliberate indifference" to a "serious medical need." *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016).

Defendants move for summary judgment on the medical care claim on the grounds that Smith did not have a serious medical need and even if he did, he received medical attention and ice from a nurse and was later scheduled to see a dentist. But defendants did not include any facts in their proposed findings of fact relating to Smith's medical care claims. In their brief, they cite an incident report that appears to have been written by defendant Tomaszewski stating that Smith was seen by a nurse for minor cuts and was given ice. Dkt. 18 at 18. But

9

citing this document in a brief does not establish that Smith was given adequate medical treatment, that he did not have a serious medical need, or that Riemer's conduct was objectively reasonable. Therefore, defendants are not entitled to summary judgment on Smith's medical care claim.

**C. Remaining claims and recruitment of counsel for Smith**

Finally, Smith was granted leave to proceed on claims that defendants Officers Johnson, Officer John Doe No. 1, and Dr. Richard Olson forced him to undergo dental treatment in violation of his right to due process and to hide evidence that he had been mistreated. Defendants move for summary judgment on the claim against Dr. Olson on the ground that Smith's allegations do not state any claim against Olson. But defendants ignore my previous conclusion that Smith's allegations against Olson are sufficient to state claims under the First and Fourteenth Amendments. Defendants do not even attempt to explain why they think Smith's allegations are insufficient to state claims for retaliation or due process violations.

As for Smith's claims against Johnson and John Doe No. 1, defendants argue that the claims should be dismissed because Smith has never been able to identify the full names of these individuals. (Defendants also move for dismissal of Smith's claim against Ms. Peterson for the same reason.) Defendants are correct that Smith has been unable to determine the identity of Johnson, John Doe No. 1, and Peterson, but I disagree that his inability to do so is a reason to dismiss his claims against them. Instead, I conclude that the court should attempt to recruit counsel for Smith to represent him for the remainder of this case.

Up to this point, Smith has relied on other inmates to draft nearly everything he has filed in this case, including an early request for court assistance in recruiting counsel that I denied. Smith had difficulty responding to defendants' motion for summary judgment, relying

almost entirely on his previously filed sworn complaints. His pro se status and incarceration have made it extremely difficult for him to determine the identity of the unknown defendants. Defendants have not been particularly forthcoming in providing information to Smith, making broad statements such as there have been "numerous" people employed at Lincoln Hills named "Peterson" and "Johnson" and that the name is so common they cannot identify who Smith is referring to. Dkt. 28. If Smith was represented by counsel, counsel may have been able to determine the identity of the unknown individuals through carefully worded interrogatories or depositions of the known defendants.

Under these circumstances, I conclude that the difficulty of litigating this case going forward, particularly at a trial, would exceed Smith's abilities. I will strike the trial date and current schedule and will stay the case while the court attempts to recruit counsel to represent Smith. If the court is able to recruit counsel to represent Smith, the court will set a status conference to set a new schedule for this case.

Smith should know that locating counsel may take a long time, as he is now one of approximately 10 pro se litigants for whom this court is currently recruiting counsel. The court will attempt to recruit counsel for Smith for up to one year. If the court is unable to find counsel willing to represent him, Smith will have to proceed to trial on his own and his claims against Johnson, Peterson, and John Doe No. 1 will be dismissed. Smith may also decide at any time that he does not want to wait for the court to find counsel to represent him. If he decides that he would prefer to proceed pro se, he may notify the court at any time and the stay will be lifted so that this case may proceed to trial.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 59, is DENIED.

2. The June 24, 2019 trial date is STRUCK. All matters in this case are STAYED while the court attempts to recruit counsel to represent plaintiff Trayvon Smith. Once the court finds counsel willing to represent Smith, the court will set a new schedule for the remainder of the case.

Entered May 16, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge